WATTS MERCANTILE COMPANY v. JAMES A. BUCHANAN.

[46 South., 66.]

1. CORPORATIONS. *Promissory notes. Scope of agency. General manager. Estoppel.*

A suit on the promissory note of a corporation, given by its general manager for property purchased and received by the corporation from the payee, cannot be defeated by showing that the general manager was without authority to execute the note.

2. SAME. *Laws 1900, p. 127, ch. 88, sec. 5. Ultra vires.*

A corporation purchasing shares of the capital stock of another corporation cannot hold the shares purchased and defeat the payment of a note given for the price on the ground that the transaction was *ultra vires* and violative of Laws 1900, p. 127, ch. 88, sec. 5, prohibiting such purchases.

FROM the circuit court of, second district, Jones county.

HON. DAVID M. MILLER, Judge.

Buchanan, appellee, was plaintiff in the court below; the mercantile company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*W. R. Harper*, for appellant.

The court below held that Donald as manager had authority to purchase the stock in another corporation and give the notes of the Watts Mercantile Company therefor.

This ruling is so manifestly wrong, that it need only to be stated to this court to be determined. The Watts Mercantile Company itself could not purchase or hold stock in the Alberta Hoop Company, under Code 1906, § 5005, and even if there had been direct authority from the company to the manager, it would have been *ultra vires* and absolutely void, and all notes given for such stock, being without consideration, are invalid and uncollectible. The act of this one corporation, giving notes for stock

in another corporation, was in direct defiance of law, and this law was well known to the holders and takers of the notes, and to the purchasers thereof, and these notes being without consideration, are null and void in the hands of all persons.

Manifestly under Code 1906, § 5005, and the decisions thereunder, the court below ought to have decided for the appellant.

*Pack & Montgomery,* for appellee.

The court below held that appellant was liable for the notes, not because one corporation had the right to purchase the stock of another corporation, but because appellant absorbed all the assets of the Alberta Hoop Company, and in this view, we contend that the court was clearly right.

The position of appellant taken in the court below and in this court shows that liability is denied on two grounds:

1. That the purchase of said stock was not authorized by an action of the board of directors of the Watts Mercantile Company; and that Donald therefore acted without authority from the corporation.

2. That even though appellant received the assets of the Alberta Hoop Company, and enjoyed the fruits of said transaction, it is not liable because the purchase of the stock was *ultra vires.*

In answer to the first contention, we submit that appellant cannot complain of the act of its manager, Donald, because it acquiesced in and ratified his acts by accepting and appropriating to its own use, all the assets of the Alberta Hoop Company, and thereby enjoyed the fruits of Donald's acts. The act of Donald, he being permitted to manage and control the affairs of appellant corporation, was, under the law, the act of the corporation itself. Code 1906, § 5015.

Relative to the second point, even though admitting that said transaction was in violation of law, appellant is estopped from pleading *ultra vires* as a defense, since it retained the fruits of the contract. 10 Cyc., 1067, pars. a and b, and authorities cited

thereunder. In the case of *Manchester, etc., R. R. Co.* v. *Concord R. R. Co.,* 9 L. R. A., 693, the court holds in a similar case that such a defense is "so repugnant to the natural sense of justice, so contrary to good faith and fair dealing and so opposed to the weight of modern authority, that it need only be said that neither party to the transaction, *ultra vires* simply, will be heard to allege its invalidity while retaining the fruits." This case is cited and approved in a number of cases shown in 2 L. R. A. Cases As Authorities, 243.

Appellant has violated the law, in purchasing said stock, and subjected itself to an action by the state to forfeit its charter, but this is a complaint for the state alone to make and the corporation cannot set this act up itself as a defense to this suit, so long as it retains the fruits of the transaction. 10 Cyc., p. 249, and authorities; *Wood* v. *Corry Water Works Co.,* 12 L. R. A., 168, and the exhaustive notes thereunder, and see this case cited and followed in L. R. A. cases as authorities, vol. 2, p. 543.

CALHOON, J., delivered the opinion of the court.

Buchanan brought this suit against the Watts Mercantile Company on a promissory note for $200 ; the note itself reciting that it was "for his entire interest in the Alberta Hoop Company." This note was given before the Code of 1906 took effect. The note was signed, "Watts Mercantile Company, per S. Q. Donald." Two defenses are set up—the one being that S. Q. Donald had not been authorized by the Watts Mercantile Company to make this purchase, and the other that the whole transaction was *ultra vires,* in that it involved a purchase by the Watts Mercantile Company, which was a corporation, of an interest in the Alberta Hoop Company, which was also a corporation. If the transaction was *intra vires,* it is idle in this case to talk about Donald not having the power to sign the note for the Watts Mercantile Company. He was the general manager of that corporation, and that corporation got the benefit of the purchase. There were but three stockholders in that corpora-

tion, and Donald was one of them;'and besides, which is abso-lutely conclusive, it appears that that corporation got the pro-ceeds of the purchase, and in fact made payments on that note to the amount of $120. This payment was a ratification as pronounced as any ratification could be.

In examining the question as to whether or not this contract was *ultra vires,* it must be borne in mind that Buchanan was a private individual. He simply sold his interest to the Watts Mercantile Company, which corporation, it is shown, had been part owner and stockholder in the Alberta Hoop Company, and when it bought from Buchanan it practically owned the Alberta Hoop Company. We are thus drawn to consider the bald proposition whether a corporation, which makes an *ultra vires* purchase from a private individual who has the power to sell, can set up its own *ultra vires* act to defeat payment, and at the same time hold onto the proceeds of the contract. The point is made here that, granting all this, still the case should be reversed, because the action was on the note, and not on a *quantum valebat;* and in support of this the case of *Fairly* v. *Nash,* 70 Miss., 193, 12 South., 149, is cited. Under the cir-cumstances we think the decision inapplicable.

The only color of defense on the doctrine of *ultra vires* must be derivable from acts 1900, p. 127, c. 88, § 5, which is in the following words:

"Sec. 5. No corporation shall directly or indirectly purchase or own the capital stock, or any part thereof, of any other cor-poration; nor directly or indirectly purchase, or in any man-ner acquire the franchise, plant or equipments of any other cor-poration, if such other corporation be engaged in the same kind of business and be a competitor therein. Any corporation of-fending against this provision shall forfeit its charter, if a do-mestic corporation, and if a foreign corporation, shall forfeit its right to do business in this state, and shall be proceeded against by the attorney general in manner and form provided in section 4 of this act."

It will be noted that this statute forbids the purchase by one corporation of the capital stock of another, or the aquisition of the franchise, plant, or equipment of any other corporation. The penalty it inflicts is that the corporation so purchasing shall forfeit its charter and shall be proceeded against by the attorney general. It might be enough in the case before us to say that the penalty denounced is against the purchasing corporation, and that it would have to be stretched to cover a case as against an individual seller. However, we need not bother about this, but prefer to plant ourselves, in the particular case before us, on the decisions of various courts, notably, of New York, Massachusetts, and Wisconsin, and on the language of the New York court that "that kind of plunder which holds onto the property, but pleads the doctrine of *ultra vires* against the obligation to pay for it, has no recognition or support in the laws of this state." We refer to 2 Cook on Corporations, p. 1608, and notes. We subscribe to that doctrine in the particular case we have in hand, and, if it be true that the federal courts would hold differently, we respectfully decline to follow them; but we do not think it would be so held in the federal courts on the facts of the case at bar. The view we have taken of this case does not at all affect the advisory opinion in *Woodberry* v. *McClurg*, 78 Miss., 836, 29 South., 514, which case had reference to the propriety of a charter being approved by the attorney general, which charter expressly authorized the purchase of the stock in other corporations.

*Affirmed.*