## PEOPLES BANK *v.* LAMAR COUNTY BANK.

### [66 South. 219—67 South. 967.]

BANK AND BANKING.  *Ownership of stock.   Transfer.   Conversion.*

Under Code 1906, section 5005, providing that no corporation shall purchase or own the capital stock, or any part thereof, of any other corporation, if such other corporation be engaged in the same kind of business and be a competitor therein, and that any corporation offending against this provision shall forfeit its charter if a domestic corporation, and if a foreign corporation shall forfeit its right to do business in the state, a bank is prohibited from accepting a transfer of stock in another bank, with which it was in competition, in payment of the indebtedness of a customer; and such transfer being illegal, the transferee, could not recover against the bank whose stock was so transferred for conversion thereof in refusing to transfer the same on its books to the transferee bank.

#### ON SUGGESTION OF ERROR.

1. BANK AND BANKING.  *Ownership of stock in other banks.   Transfer. Validity.*

Under Code 1906, section 5005, prohibiting the acquisition of stock by one of two competing corporations in the other, is a mere *ultra vires* act and of which the state only could complain.

2. BANK AND BANKING.  *Transfer of stock.  Bona fide purchaser without notice.*

    A corporation by issuing a second certificate of stock without surrender and cancellation of the first, becomes liable to any subsequent purchaser for value of the first, who was without notice of the issuance of the second.

3. CORPORATION.  *Transfer of stock.  Bona fide purchaser without notice.*

    A corporation accepting corporate stock in payment of a debt due it to the extent of the value of the stock is a purchaser for value to the same extent as if it had paid money.

APPEAL from the circuit court of Jefferson Davis county.

HON. A. E. WEATHERSBY, Judge.

Suit by the Lamar County Bank, against the Peoples Bank.  From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*D. A. McIntosh,* for appellant.

In giving us notice that we might file a brief in this matter, the court has suggested that we discuss what hearing, if any, the case of *Watts Mercantile Company* v. *Buchanan,* 92 Miss. 540, 46 So. 66, has upon the case at bar.  In the instant case, the court is dealing with a transaction between two competing corporations; in the Buchanan case, the court was dealing with a transaction between an individual, and a corporation.  In the instant case, the appellant here, is setting up not only the *ultra vires,* but the illegal act of the appellee, the moving party, as a bar to its right of recovery, whereas, in the Buchanan case, the appellant was setting up its own *ultra vires* act, and its own illegal acts against Buchanan's right to recover for the value of the stock which he formerly owned in the Elberta Hoop Company.

In the Buchanan case the appellee had parted with something of value on the promise of the appellant to pay therefor, and appellant not only held on to the pro-

perty, but invoked the doctrine of the *ultra vires* against its own obligation to pay. In the instant case, the appellee, Lamar County Bank, parted with nothing of value to Vance R. McDonald, because the proof shows that McDonald was absolutely insolvent, and they knew it when they acquired this certificate of stock from him, and they took it for the purpose of applying it on the old debt of Vance R. McDonald to them, at a time when the Bank of Bassfield, which had never received one cent for the stock, had already transferred the same on its books at the request of Vance R. McDonald, to other parties, who had paid McDonald therefor.

At the close of Judge CALHOUN's able opinion in the case of *Watts Mercantile Company* v. *Buchanan,* he used these words: "We subscribe to that doctrine in the particular case we have in hand," etc. This able Jurist was on the bench, and participated in the case of *Woodson* v. *Hopkins*; evidently he had no purpose in this case to overrule the wise doctrine announced in that opinion, that neither a court of law or Equity in this state will entertain a suit for relief by either of the two parties *in pari delicto* against the other, where the contract is against the public policy. Again, the last clause in the above opinion, "A careful reading of the pleadings of the record, the evidence and the decree in this case, makes it plain that this suit cannot be maintained, except by the use, and through the aid of the illegal contract itself, etc."

It is suggested by the counsel *contra,* in his able brief, that perhaps the Lamar County Bank ought not to have purchased this stock from Vance R. McDonald direct, but that they should have procured it to be assigned to a trustee for their benefit, as security for the debt due to them by Vance R. McDonald. The Lamar County Bank was evidently too wise to take this certificate of stock as a mere security for a preexisting debt, and thus leave their old debt against Vance R. McDonald, unsat-

isfied, and in full force.  They knew the financial con-
dition of Vance R. McDonald, and doubtless were advised
that if they accepted the stock as security for a preexist-
ing debt, they might run against the old and sound prin-
ciple announced in *Perkins* v. *Swauk,* 43 Miss. 349, which
announces that where property is taken merely as secur-
ity for a preexisting debt, which remains unsatisfied, and
in full force, the party taking it, is not a purchaser for
value.

The court's opinion in this case covers precisely our
conception of the law of this case, and we deem it use-
less to argue the same further.  There is much wisdom,
we think, in the following excerpt from the able opinion
of Judge CALHOUN in the case of *Watts Mercantile Co.*
v. *Buchanan,* viz: ''We subscribe to that doctrine in the
particular case which we have in hand,'' and if the court
overrules this suggestion of error, and subscribes to the
doctrine, announced in its former able opinion, as the
law of the case which it has in hand, we are confident it
will be in harmony with Mississippi law and authority.

*Tally & Mayson,* for appellee.

In response to the request of the court, counsel for
appellent have filed a brief discussing to some extent the
case of *Watts Mercantile Company* v. *Buchanan,* 93 Miss.
540.  Counsel contend that the holding of this court in
the Watts Mercantile Company case is inapplicable be-
cause the transaction there was between a corporation
and a private individual, and that the corporation was
setting up its own *ultra vires* act in defense of its obli-
gation to pay for property of which it retained posses-
sion.

It is true that the Watts Mercantile Company case is
not identical with the case at bar.  The facts in that case
are not very clearly set out, but it will be noted from a
careful reading of Judge HARPER's brief and the opinion
of the court in the case, that the Watts Mercantile Com-
pany, a corporation, bought of Buchanan, stock of the

Alberta Hoop Company, a corporation, for which it executed to Buchanan its promissory note. The note was not paid and Buchanan brought suit against the Watts Mercantile Company thereon. The Watts Mercantile Company defended on two grounds; one was that its manager had no authority to purchase the stock of the Alberta Hoop Company, and secondly, that if McDonald had authority from the Watts Mercantile Company to make the purchase, the note was void because, under the Acts of 1900, one corporation could not purchase or own the capital stock of another corporation or purchase or own the franchise plant or equipment of another corporation.

In passing on the case the court held that: "If the transaction was *ultra vires,* it is idle in this case to talk about McDonald not having the power to sign the note for the Watts Mercantile Company." The court then proceeds to examine the question of the effect of the Mercantile Company purchasing stock of the Alberta Hoop Company from Buchanan. Jude CALHOUN said in speaking to this point: "In examining the question as to whether or not this contract was *ultra vires,* it must be borne in mind that Buchanan was a private individual;" so we say in this case, it must be borne in mind that McDonald was a private individual, and had free unlimited power to sell his stock in the Peoples Bank, unaffected by section 5005 of the Code otherwise, so that in this case, as in the Watts Mercantile Company case, there is no question of the power of the seller to sell the stock. It is true that in the Watts Mercantile Company case the *ultra vires* act was set up by the purchasing corporation; in this case it is set up by McDonald's predecessor in title, and in this respect only are the two cases different. The principle involved, however, is the same. In that case the court held that the purchasing corporation could not set up the *ultra vires* act. In *Hinds, etc., County* v. *Railroad,* 85 Miss. 599, the selling corporation

undertook to set up the *ultra vires* act, and it was there held that the selling could not do so. In other words, under the doctrine announced in the Watts Mercantile Company case, and the case in 85 Miss. *supra,* it is definitely settled that the selling company cannot set up the want of power in the purchasing company to defeat the transaction, and that the purchasing company cannot plead an *ultra vires* act, if it retained the fruits of the purchase. It clearly appears from these two cases that if the Peoples Bank had sold this stock direct to the Lamar County Bank, then the Peoples Bank could not be heard to say that the transaction was *ultra vires,* and it would seem clear therefore, that if a direct sale from the Peoples Bank could not be said to be *ultra vires,* it certainly cannot be said that when the stock was sold by McDonald—who had a right and unlimited power to sell—that the act was *ultra vires.* Stated differently, the rule is that no one has a right to complain of a transaction unless he is injured by it, without regard to the lack of power in another to do the act.

In the case at bar the state of Mississippi could perhaps complain of the act. The creditors of the Lamar County Bank could also, if they could show that their interest had been affected by the transaction. Under the same conditions the stockholders of the Lamar County Bank might complain, but the Peoples Bank has no ground of complaint, because it is not injured by the transaction. In considering this question it must always be borne in mind that the Lamar County Bank purchased the stock from one who had a legal right to sell it, as unequivocally held in the Watts Mercantile Company, *supra,* and the only question involved is the power of the Lamar County Bank to buy. It probably had no such power, but it did buy, and for a very good reason. A third party to the transaction, to wit, the Peoples Bank, had no right to complain, and cannot raise the question of power in this proceedings.

We respectfully submit that the case should be affirmed.

REED, J., deivered the opinion of the court.

This is an action of conversion brought by the Lamar County Bank, appellee, against the People's Bank, appellant, to recover the amount of thirty shares of the capital stock in appellant bank, with accrued dividends. This stock was assigned to appellee by Vance R. McDonald in settlement of an indebtedness. He was at the time cashier of appellee bank and largely indebted to it. The evidence shows that the stock was transferred and delivered by him to the bank in part payment of his indebtedness and that he received credit for the face value thereof. Appellant refused, upon request, to enter a transfer of the stock on the books of the corporation. On the hearing of the case the trial court granted a peremptory instruction for the plaintiff, and gave a verdict for the full value of the stock, with dividends and interest. From this action of the court this appeal was taken.

Appellant claims that the purchase of the stock by appellee was an illegal contract under the laws of Mississippi, and that such contract can have no effect or be enforced in any court of this state. This point was also raised in a demurrer, which was filed by appellant to the declaration and overruled by the court. It is contended that appellant and appellee are competing corporations, being engaged in the same kind of business, that of banking, and being competitors therein. The evidence shows that the banks were located in the same general territory, and should be classed as competitors for business therein. By section 5005 of the Code of 1906, competing corporations are prohibited from directly or indirectly purchasing or owning the capital stock or any part thereof of another corporation. We quote that section in full:

"No corporation shall directly or indirectly purchase or own the capital stock, or any part thereof, of any

other corporation, nor directly or indirectly purchase, or in any manner acquire the franchise, plant or equipments of any other corporation, if such other corporation be engaged in the same kind of business and be a competitor therein. Any corporation offending against this provision shall forfeit its charter, if a domestic corporation, and if a foreign corporation, shall forfeit its right to do business in this state, and shall be proceeded against by the attorney-general in manner and form provided in section 5004 of this chapter.''

It will be noticed that by the statute the purchasing and owning of capital stock in competing corporations is not only, prohibited, but the offending corporation is severely penalized therefor. We note that subsequent to the time of the sale of the stock by McDonald to appellee, which occurred in 1909, the legislature of this state has again, in 1910, dealt with this statute, and has by an act (chapter 223 of the Laws of 1910) amended section 5005 so as to prohibit competing corporations from acquiring in any manner the capital stock, or any part thereof, of another corporation doing business in this state. We mention this law here, not because it is in force in the present case, but only to show that the state legislature has recently approved the statute, and by the amendment preventing the acquiring of the capital stock, extended its effect. The statute expressly prohibits the act of appellee in purchasing the stock. The contract of purchase was in direct violation of the statute. It was therefore illegal. Being illegal, appellee could not through it recover.

We find quite a full discussion of the law applicable to illegal contracts in the case of *Woodson* v. *Hopkins*, 85 Miss. 171, 37 So. 1000, 38 So. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275. In that case the contract was illegal, as being contrary to public policy. In this case it is illegal, because made in breach of a statute. The principles announced in *Woodson* v. *Hopkins* are in the main

applicable to the case now before us. In delivering the opinion of the court, WHITFIELD, C. J., made, with approval, the following quotation from 9 Cyc. 546:

"No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxim, '*Ex dolo malo non oritur actio,* and in '*In pari delicto potior est conditio defendentis.*' The law, in short, will not aid either party to an illegal agreement; it leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it aside at the suit of the other, or, when the agreement has been executed, in whole or in part, by the payment of money or the transfer of other property, lend its aid to recover it back. The object of the rule refusing relief to either party to an illegal contract, where the contract is executed, is not to give validity to the transaction, but to deprive the parties of all right to have either enforcement of, or relief from, the illegal agreement. While it may not always seem an honorable thing to do, yet a party to an illegal agreement is permitted to set up the illegality as a defense, even though it may be alleging his own turpitude. Money paid under an agreement which is executed, whether as the consideration or in performance of the promise, cannot be recovered back where the parties are *in pari delicto.* And goods delivered or lands conveyed under an illegal agreement are subject to the same rule. Courts will not, even with the consent of the parties, enforce an illegal contract. And it would seem to follow that an illegal agreement cannot be rendered legal by ratification."

In the case of *Franklin Bank* v. *Commercial Bank,* 36 Ohio St. 350, 38 Am. Rep. 594, quoting from the headnote:

"The parties were banking corporations organized under a law forbidding any bank to hold or purchase stock in any other corporation, except to prevent loss upon a debt previously contracted in good faith. The plaintiff loaned money to the defendant's president individually, and took as security a certificate of shares of the capital stock of the defendant belonging to him. Subsequently the plaintiff presented the certificate to the defendant, and demanded a transfer of the shares on the defendant's books. This being refused, the plaintiff sued for conversion of the stock. Held not maintainable."

Mr. Michie, in his treatise on the law of Banks and Banking, discussing the purchasing and holding of stock in another corporation, and stating that, where expressly prohibited from so doing, a bank could not purchase stock in another corporation, and its action in so purchasing could not be validated by estoppel, cited the case of *Franklin Bank* v. *Commercial Bank,* and in a footnote made the following comment:

"Where a bank, which is prohibited by law from taking stock in another corporation as a pledge for a contemporary loan, takes in such manner the stock of another bank, it has no right of action against the latter bank for its refusal to transfer the stock, though the law provides that any bank violating any provision of the act shall forfeit all its rights and franchises, which forfeiture can only be declared in a proceeding by the state." Michie on Banks and Banking, vol. 1, p. 660.

The act of purchasing the stock was clearly prohibited by the statute. There can be no question but that it was the intention of the legislature to prohibit just what has been done in this case. This intention will certainly be gathered from the language and subject-matter of the statute, and the evil, the purchasing and owning by a corporation of capital stock in a competing corporation, which it seeks to prevent. Appellee, the party seek-

ing to recover, was obliged to make out its case by showing the illegal contract. It acquired the right it claimed in the stock through the medium of this illegal transaction. Appellee is therefore not entitled to recover from appellant. *Woodson* v. *Hopkins, supra.*

*Reversed and remanded.*

### OPINION ON SUGGESTION OF ERROR.

SMITH, C. J. The facts of this case necessary to now be stated, in addition to what was said relative thereto in our former opinion, are that the certificate of stock here in question was lost by its former owner, McDonald, and on March 20, 1908, a new certificate was issued to him therefor, which new certificate, or, rather, another issued in lieu thereof, is now owned by J. H. McLeod. In April, 1909, the certificate first issued, the one here in question, was assigned by McDonald to appellee in part payment of an indebtedness due it by him. Whether McDonald had in fact lost this certificate at the time he obtained the issuance of the new certificate does not appear, and is not material.

The ground upon which we reversed the judgment of the court below was that appellee's acquisition of this certificate of stock was in violation of section 5005 of the Code, and therefore it could not invoke the aid of the courts in enforcing any right which it claimed to have thereby acquired. 66 So. 219.

Appellant has now called to our attention, for the first time, the case of *Watts* v. *Buchanan,* 92 Miss. 543, 46 So. 66, in which the acquisition of stock by one of two competing corporations in the other was treated as a mere *ultra vires* act and of which the state only could complain. The construction there put upon the statute is controlling here unless that case is to be overruled, and this we do not think should be done.

Two other reasons are assigned by appellant for reversing the judgment of the court below: First, that,

when it in good faith issued the second certificate of stock, the first ceased to be binding upon it; second, that appellee was not a purchaser for value. It is stated in 4 Thompson on Corporations, sec. 3522, that "stock properly issued is valid and binding until taken up by the corporation and canceled." Whether this be true or not, it is beyond question that by issuing the second certificate without the surrender and cancellation of the first, appellant became liable to any subsequent purchaser for value of the first who was without notice of the issuance of the second (10 Cyc. 634); and, when appellee accepted the stock in payment of the debt due it by McDonald to the extent of its value, it became a purchaser thereof for value to the same extent as if it had paid the money. *Soule* v. *Shotwell,* 52 Miss. 236; *Harris* v. *Lombard,* 60 Miss. 29.

Suggestion of error sustained and judgment of the court below affirmed.

*Suggestion of error affirmed.*

REED, J. I cannot agree to the affirmance of this case. My reasons for declining to join with the majority of the court in sustaining the suggestion of error and affirming the case are fully stated in our former opinion appearing in 66 So. 219.

It is stated in the present opinion that this case is controlled by the decision in the case of *Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 543, 46 So. 66. I note quite a difference in the two cases. In the Watts case, Buchanan sold his interest in the Alberta Hoop Company to the Watts Mercantile Company. The suit was upon a promissory note given by the vendee to evidence the purchase price. To escape the payment of the note, the company defended on the ground that the transaction was *ultra vires,* because it involved a purchase by one corporation of an interest in another. It seems that the Watts Company had been part owner and stockholder

of the Hoop Company, and when it bought from Buchanan it practically owned the entire company. Judge CALHOON, delivering the opinion of the court, after reciting the facts, said:

"We are thus drawn to consider the bald proposition whether a corporation, which makes" an *ultra vires* . . . "purchase from a private individual who has the power to sell, can set up its own *ultra vires* to defeat payment, and at the same time hold on to the" proceeds of "the contract."

In referring to the statute forbidding the purchase by one corporation of the capital stock of another, and the penalty which is provided that the corporation offending should forfeit its charter and be proceeded against by the attorney-general, the judge continued:

"It might be enough in the case before us to say that the penalty denounced is against the purchasing corporation, and that it would have to be stretched to cover a case as against an individual seller."

The decision of the court was planted particularly on the language of a New York court (*Seymour* v. *Spring Forest Cem. Ass'n,* 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859) which is as follows:

"That kind of plunder which holds on to the property, but pleads the doctrine of *ultra vires* against the obligation to pay for it, has no recognition or support in the law of this state."

Judge CALHOON then said:

"We subscribe to that doctrine in the particular case we have on hand."

It will be noted that in the *Watts* v. *Buchanan Case* the court was dealing with the enforceability of an *ultra vires* contract between the parties thereto. The court was applying the rule taken from the language of the New York court to the particular case in hand. The Watts Company, a corporation, was seeking to defeat the collection of its promissory note by setting up its

own *ultra vires* act, and at the same time holding on to the proceeds of the contract.

This case is different.    Appellant is not endeavoring to hold on to property acquired by any *ultra vires* act on its part.    It is not seeking to defeat payment of any indebtedness it owes.    It has not been guilty of any *ultra vires* act.    It has received no benefit from such an act.

What appellee complains of is appellant's refusal to transfer on its books stock of its company which was acquired by appellee in clear violation of the statute.

Appellant is not pleading *ultra vires*.    Appellant bases its refusal to make the transfer upon the unlawfulness of appellee's purchase.    Appellee claims its right to the stock through the medium of an illegal transaction.    The contract in this case is illegal because in breach of a statute.    I think that this was sufficient ground for appellant's refusal to make the transfer, and I do not believe that this case should be controlled by the decision in the case of *Watts Mercantile Co.* v. *Buchanan*.