HOME OWNERS' LOAN CORPORATION *v.* MOORE *et al.*

(Division B. Jan. 2, 1939.)

[185 So. 253. No. 33458.]

J. E. Davis, of Hattiesburg, and J. Thomas Dunn, of Jackson, for appellant.

Hannah & Simrall, of Hattiesburg, for appellee.

Argued orally by **J. Thomas Dunn**, for appellant, and by **James R. Simrall**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant, as owner of a mortgage indebtedness against Mrs. Hinton and Mrs. McReynolds on a certain lot in the City of Hattiesburg, alleged to have been their home when the mortgage was executed, filed its bill in the Chancery Court against appellees seeking subrogation to rights of a cancelled mortgage on said property executed by them in favor of the Hattiesburg Industrial Loan Association, and to have cancelled the lien of an intervening enrolled judgment owned by appellee, B. D. Moore, Jr., and for foreclosure of its mortgage. There was a hearing after the overruling of a demurrer, on bill, answer, and proofs, resulting in a decree denying appellant the relief sought. From that decree, this appeal is prosecuted.

About the material facts, there was no substantial dispute. Appellant's brief contains a fair and correct statement of the case, which we adopt:

"On April 6, 1933, Mrs. Edwina McSwain Hinton and Mrs. Alberta McSwain McReynolds and Mr. T. J. McReynolds, Jr., (husband of Mrs. Alberta McSwain McReynolds) became indebted to the Hattiesburg Industrial Loan Association in the amount of $450, to secure the payment of which they executed to the said Association on that date a deed of trust on certain real property in the City of Hattiesburg, Mississippi, owned by Mrs. Hinton and Mrs. McReynolds (each having an undivided one-half interest therein), upon which is situated a residence.

"Mrs. Hinton and Mrs. McReynolds subsequently borrowed an additional $67.50 from said Association and executed their note to evidence same. Default was made in the payment of the debt to said Association and Mrs. Hinton, on August 1, 1933, made written application to Appellant for a loan to pay off the mortgage debt to said Association and offered as security for said loan a first lien on said property. Mrs. Hinton furnished to Appellant an abstract and certificate of title on said property prepared by Hon. Earle L. Wingo, an attorney of Hattiesburg, Mississippi, which disclosed the only liens or encumbrances against the said property to be the deed of trust in favor of said Association and delinquent taxes due the City of Hattiesburg for the years 1931 and 1932. Appellant, on December 29, 1933, granted a loan of $684.37 to Mrs. Hinton and Mrs. McReynolds, the proceeds of which loan were used to discharge the said mortgage debt to the Hattiesburg Industrial Loan Association; to pay the delinquent 1931-32 taxes and pay the expenses of obtaining the loan, including a fee to Wingo of $25.00 for acting as attorney for Mrs. Hinton and Mrs. McReynolds. The Hattiesburg Industrial Loan Association cancelled its deed of trust of record on January 8, 1934. To evidence said loan Mrs. Hinton and Mrs. McReynolds, on December 29, 1933, executed their promissory note to Appellant for $684.37, with interest at 5% per annum, payable in monthly installments and to secure the payment of said loan, executed, on January 5, 1934, a deed of trust on said property in favor of Appellant, which was filed for record January 7, 1934. A final certificate of title was then furnished Appellant by Wingo certifying that the deed of trust from Mrs. Hinton and Mrs. McReynolds to Appellant was a valid first lien on said property. Subsequently, on June 27, 1935, Appellant paid the 1933 and 1934 State and County ad valorem taxes on said property in the amount of $55.41, and on August 24, 1935, paid the 1933-34 taxes due the

City of Hattiesburg on said property, both ad valorem and paving assessment, in the amount of $260.30.

"There was outstanding, however, at the time Appellant's deed of trust was filed for record a judgment in favor of the General Finance Company of New Orleans against T. J. McReynolds, Jr., as principal, Mrs. T. J. McReynolds, Jr. (same person as Mrs. Alberta McSwain McReynolds), Donald Yarbrough and B. D. Moore, Jr., as sureties, in the amount of $466.70 and costs which was enrolled on July 29, 1933, and was assigned to B. D. Moore, Jr., Appellee, on September 28, 1933. On August 8, 1935, Moore, Appellee, caused a writ of execution to levy against Mrs. McReynolds' one-half interest to said property and on September 2, 1935, at the execution sale, became the purchaser for a bid of $210.65. Sheriff's deed to Appellee was filed for record September 9, 1935. Appellee claims, by virtue of the said Sheriff's deed, to now own an undivided one-half interest to said property free of the lien of Appellant's deed of trust.

"Appellant filed its bill in the lower Court seeking subrogation to the rights, privileges and priorities of the deed of trust in favor of the Hattiesburg Industrial Loan Association and to the tax liens of the State of Mississippi, County of Forrest and City of Hattiesburg, all of which were discharged by the funds advanced by it and praying the appointment of a special commissioner to sell said property to satisfy said liens. A demurrer to the bill was overruled and upon answer and hearing Appellant's bill was dismissed on the ground that Appellant had no authority under the Act of Congress creating it to grant the loan to Mrs. Hinton and Mrs. McReynolds and that Appellant had actual and constructive knowledge of the existence of the judgment in favor of Moore, which was held to be prior both in right and time to the deed of trust in favor of Appellant. Decree pro confesso was taken against the other defendants."

The chancellor found as a fact that appellant had

actual knowledge of the judgment when it made the loan. The only evidence on that subject was the following: Wingo was Mrs. McReynolds' attorney in the action in which the judgment was obtained. Although appellant accepted and acted on his certified abstract of title, he was employed to make it by Mrs. Hinton and Mrs. McReynolds, whose fee for so doing was paid by them. There was no evidence whatever that the state office at Jackson, which passes on the applications for loans, including the abstracts, had any actual knowledge of the judgment from Wingo, or any other source; although the evidence showed that Wingo was one among other attorneys at Hattiesburg whose abstracts it was willing to act on.

The questions are: (1) The right of appellant to grant the loan, and (2) the right of appellant to subrogation as prayed for. Appellant is a corporation chartered and existing under an Act of Congress of June 13, 1933, 48 Stat. 128. The Act (Section 4(c) and 4(d) Public No. 43, 73rd Congress, 48 Stat. 129, 12 U. S. C. A., sec. 1463(c, d) provides that the property need only "be used as a home."

We pass the question as to whether the property was the home or the homestead of the borrowers, and go to the one, whether anyone except the federal government can raise the question of ultra vires. The law looks with disfavor on the defense of ultra vires and will not allow it to prevail when it would defeat the ends of justice. National Surety Company v. Hall-Miller Decorating Company, 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.), 325. The doctrine should never be applied where it will defeat the ends of justice if such a result can be avoided. San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816. An act of a corporation relating to the subjects within its powers though it should exceed those powers is not void. Haynes v. Covington, 13 Smedes & M. 408, 21 Miss. 408; Watts Mercantile Company v. Buchanan, 92 Miss. 540, 46 So. 66; Commercial Bank v. Nolan, 7 How. 508, 8 Miss. 508; Grand Gulf Bank v. Archer, 8 Smedes & M. 151, 16 Miss.

151; Littlewort v. Davis, 50 Miss. 403. The general rule is that the question of ultra vires can only be raised by the sovereignty which created the corporation. Fortier v. New Orleans National Bank, 112 U. S. 439, 5 S. Ct. 234, 28 L. Ed. 764. It is true that the act of a corporation entirely foreign to the purposes for which it was created is void from want of power. Haynes v. Covington, supra. That is not the case here. Making loans on real estate is the general power granted. Whether that power is being exercised in accordance with the charter concerns the federal government alone. It is no concern of either of the borrowers or the third persons.

Going now to the subrogation question: The doctrine of subrogation rests on the principle of natural equity and its basis is the doing of complete and essential justice between the parties without regard to form. Box v. Early, Miss., 178 So. 793; Russell v. Grisham, 177 Miss. 435, 170 So. 900; Spence v. Clarke, 152 Miss. 542, 120 So. 195.

Under its charter, appellant was only authorized to make loans secured by mortgages which were first liens. In the application and other proceedings resulting in the consummation of this loan, it was understood and agreed by all the parties concerned that appellant's mortgage should be a first lien; that the loan was being made for the purpose of discharging prior liens. It was not intentional, but through inadvertence or mistake, that the intervening judgment lien was overlooked. The holder of the judgment lien was not thereby prejudiced. It was already a second lien and continues to be. What occurred was tantamount to an agreement for subrogation. We think this principle applicable: ''The fact that one paying a senior lien may have known of the existence of a junior lien will not, however, defeat his right to subrogation, provided, of course, he had an agreement for subrogation although the senior lien is discharged. On account of this agreement equity simply assigns this security to him.''

Reversed and judgment here for appellant.