BURNETT's LUMBER & SUPPLY Co., INC., et al. *v.* COMMERCIAL CREDIT CORP.

Division B. Feb. 26, 1951.

No. 37843 (51 So. (2d) 54)

J. V. **Gibson** and **Champ C. Gibson**, for appellant Burnett's Lumber & Supply Company.

**Neville & Neville**, for appellant Booker.

**Snow & Covington**, for appellee.

**Hall, J.**

Appellant corporation is chartered under the laws of Mississippi and is authorized by its charter "to buy, own, hold, sell, and lease timber and timber lands; to buy, manufacture, and finish lumber and lumber products; to do a general wholesale and retail lumber and building material business, dealing in all building materials and supplies used in general lumber and supply business; to buy, hold, own, build, improve, sell, mortgage, lease, and rent real estate; and to buy, own, hold, sell and assign notes and mortgages and other written evidence of indebtedness on real estate," and to exercise the rights and powers conferred by Chapter 100, Code of 1930, and amendments thereto.

In the year 1946 appellant corporation was the owner of three used automobile trucks and a trailer and sold this equipment to appellant, O. L. Booker, who was engaged in logging and who was delivering logs to a mill operated as a partnership by G. S. Burnett, Sr. and G. S. Burnett, Jr., both of whom were officers in appellant corporation. The transactions were evidenced by conditional sale contracts between the two appellants and notes executed by Booker to appellant corporation. These

instruments were sold by appellant corporation to appellee for a cash consideration pursuant to a written assignment with recourse duly executed by G. S. Burnett, Sr. who was then president of appellant corporation, and who, according to the company's bylaws, was authorized so to do.

G. S. Burnett, Sr. died thereafterward in September 1946, and his said son became president. The business of the company then began to get into financial difficulties and on April 14, 1947, a meeting of all the stockholders and directors, three in number, was held. At this meeting G. S. Burnett, Jr., was removed as president and Mrs. Ella M. Burnett was elected president, the office of vice-president was left vacant, and E. G. Sessions was re-elected secretary and treasurer. These facts are all shown by written minutes prepared and adopted on that date. On the same date, according to the undisputed testimony, and at the same meeting E. G. Sessions was elected general manager of the company and was placed in full charge of its business, but this fact is not reflected by the minutes. Mrs. Burnett knew practically nothing about the business and was, in effect, president in name only; she was the largest stockholder and authorized the company's regularly retained attorney to represent her in looking after the company's business. At this time the aforesaid notes and conditional sale contracts were considerably in default and appellee was pressing appellants for the arrears due thereon. Conferences were held with the appellee's representative and an agreement was reached to refinance the balance due on these notes and contracts by the execution of new paper. Accordingly Booker executed new notes and contracts with appellant corporation covering the balance then due and, on the advice of the attorney for the company, Mr. Sessions, the general manager as well as the secretary and treasurer, endorsed and assigned these notes and contracts, with recourse, to appellee on April 23, 1947. Thereby the appellant corporation obtained an extension

of the indebtedness which, in turn, relieved the pressure immediately upon it. The old notes and contracts were mailed back to appellant corporation, and it began making payments on the new notes and contracts and continued making these payments until one-half of the amount due thereon had been paid, after which it defaulted as to further payments.

The corporate stock was sold to other parties about eight months after the date of the last mentioned notes and contracts and nothing further was paid thereon. Appellee then brought suit thereon in the county court against both of the appellants. Appellant corporation did not deny the correctness of the amount sued for but defended upon the ground that the act of the corporation in selling this equipment to Booker and in taking his notes and contracts therefor and in assigning the same with recourse to appellee was ultra vires and upon the further ground that Sessions had no authority to endorse and assign the same to appellee. The trial judge granted a peremptory instruction to appellee and, upon appeal, the circuit court affirmed the judgment rendered thereon from which action this appeal is taken.

It is here contended that the act of the corporation in acquiring and selling this equipment and in assigning and endorsing the paper with recourse is ultra vires and not binding upon it. Appellant was engaged in a general wholesale and retail lumber and supply business and under the above quoted provisions of its charter was fully authorized to transact any business which was incidental to its general corporate purposes. "A corporation may have implied power not only to acquire or purchase personal chattels, but also to take choses in action which are transferable by assignment; and it may itself become the payee of commercial paper, bonds, etc., for indebtedness owing to it, unless in the pursuit of its authorized business there is no necessity for so doing." 13 Am. Jur., Corporations, Sec. 773. "A corporation has full power to alienate its property both

real and personal, unless restricted by its charter, statute, or considerations of public policy. The implied power of a corporation to alienate its property extends to commercial paper and other choses in action which are transferable by indorsement or assignment.'' Id. Sec. 801. ''An express grant is not necessary to confer upon a corporation the power, in the legitimate transaction of its business, to become a drawer, acceptor, or indorser of a bill of exchange or to become a party to any other negotiable paper. This power is generally implied in the case of a business corporation as a necessary incident of its express powers. Such power is, for example, incident to the power of a corporation to borrow money or incur indebtedness.'' Id. Sec. 817. ''It is well settled that where a corporation acquires commercial paper or bonds in the legitimate transaction of its business it may sell them, and in furtherance of such a sale it may, in order to make them the more readily marketable, indorse or guarantee their payment.'' Id. Sec. 821.

In the early case of Haynes v. Covington, 13 Smedes & M. 408, 411, 21 Miss. 408, 411, this Court said: ''The distinction is obvious between a contract by a corporation, made in reference to a subject lying entirely without the range of the objects for which its powers were granted, and an irregular or illegal exercise of a right conveyed by its charter. If a corporation make a contract entirely foreign to the purposes of its institution, the act is void, simply for want of power in reference to the subject-matter. [Commercial Bank of Manchester v. Nolan] 7 How. [Miss.] [508] 532. But where a corporation enters into a contract in reference to a subject embraced within the scope of its granted powers, but in so doing exceeds them, the contract will not thereby be rendered void. It might constitute a ground for the resumption of its franchises by the state, but could not be objected by the party sought to be charged. [Fleckner v. President, Directors and Co. of Bank United States], 8 Wheat. [338] 353 [5 L. Ed. 631]; The Banks v. Poitaux [Poiti-

aux], 3 Rand. [Va.] 136; [Inhabitants of Shutesbury v. Inhabitants of Oxford] 16 Mass. [102] 103; Commercial Bank of Manchester v. Nolan, 7 How. [Miss.] 508; Little v. O'Brien [Obrien], 9 Mass. 423; [Silver Lake Bank v. North] 4 J[ohns] Ch. R. [N.Y.] 370; [Wade v. American Colonization Soc.] 7 S. [Smedes] & M. [Miss. 663] 697.''

And in the comparatively recent case of Home Owners' Loan Corporation v. Moore, 184 Miss. 283, 291, 185 So. 253, 255, this Court cited the last mentioned case, among others, and further said: ''The law looks with disfavor on the defense of ultra vires and will not allow it to prevail when it would defeat the ends of justice. National Surety Company v. Hall-Miller Decorating Company, 104 Miss. 626, 61 So. 700, 46 L. R. A., N. S., 325. The doctrine should never be applied where it will defeat the ends of justice if such a result can be avoided. City of San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816. An act of a corporation relating to the subjects within its powers though it should exceed those powers is not void. Haynes v. Covington, 13 Smedes & M. 408, 21 Miss. 408; Watts Mercantile Company v. Buchanan, 92 Miss. 540, 46 So. 66; Commercial Bank v. Nolan, 7 How. 508, 8 Miss. 508; Grand Gulf Bank v. Archer, 8 Smedes & M. 151, 16 Miss. 151; Littlewort v. Davis, 50 Miss. 403. The general rule is that the question of ultra vires can only be raised by the sovereignty which created the corporation. Fortier v. New Orleans National Bank, 112 U. S. 439, 5 S. Ct. 234, 28 L. Ed. 764. It is true that the act of a corporation entirely foreign to the purposes for which it was created is void from want of power. Haynes v. Covington, supra. That is not the case here.''

In view of the foregoing authorities we unhesitatingly hold that appellant corporation's participation in the transaction was not untra vires but was within the implied powers granted under its corporate charter and it is bound thereby.

It is next contended that Sessions had no authority to assign and indorse with recourse the paper

in question to appellee for the reason that the grant of such authority is not shown by the minutes of the corporation. It is undisputed in this case that nine days before transfer of this paper the directors of the corporation held a formal meeting and placed Mr. Sessions in full charge of its business and there was no other person with any authority to act for it. It is also undisputed that the company's attorney, who was duly authorized by the president of the company, advised the execution and assignment of the renewal papers and it is undisputed that the deceased president did have authority to execute the original papers. It is also undisputed that the corporation received the full face value of the notes and contracts upon assignment of the original papers and obtained an extension of the maturity dates thereof by execution of the renewal papers. We are not impressed with the contention that Sessions had no authority simply because it was not shown by the written minutes of the directors' meeting. "It is to be implied that corporations keep records of their doings; but as a general rule, the failure or neglect of the proper officer of a corporation to keep a record of its acts and resolutions cannot affect the rights of third persons dealing with it. The action of the directors of a corporation is binding on the corporation, though no record of their action was made." 13 Am. Jur., Corporations, Sec. 166. "Ordinarily, a board of directors acts through formal resolution or motion recorded on its minutes. A written entry or record of its action is not necessary to give validity to its proceedings; if its proceedings are not recorded, the action may be shown by parol." Id. Sec. 948.

In the recent case of White's Lumber and Supply Company v. Collins, 186 Miss. 659, 674-675, 191 So. 105, 107, 192 So. 312, this Court said "The powers of a general manager of a corporation, insofar as concerns third persons without notice to the contrary, are coextensive with the carrying on as a going concern of all the business of the company. Allen Gravel Company v. Nix, 129

Miss. 809, 93 So. 244; Lake Shore, & M. S. R. Company v. Pierce [Prentice], 147 U. S. 101, 114, 13 S. Ct. 261, 37 L. Ed. 97, 103.''

We take notice of the fact that appellant corporation made substantial payments on the original notes and contracts, and, subsequent to assignment of the renewal papers, paid one-half thereof.. Quite applicable to this situation is the language of this Court in Watts Mercantile Company v. Buchanan, 92 Miss. 540, 46 So. 66, 67, as follows: ''If the transaction was intra vires, it is idle in this case to talk about Donald not having the power to sign the note for the Watts Mercantile Company. He was the general manager of that corporation, and that corporation got the benefit of the purchase. There were but three stockholders in that corporation'' (just as in the case at bar) ''and Donald was one of them;'' (just as was Sessions in the case at bar) ''and besides, which is absolutely conclusive, it appears that that corporation got the proceeds of the purchase, and in fact made payments on that note to the amount of $120. This payment was a ratification as pronounced as any ratification could be.'' This disposes of the contentions made by Burnett's Lumber & Supply Company, Inc., with the result that we find no reversible error in the judgment against it.

O. L. Booker also appeals from the judgment against him. Long prior to the trial he employed an attorney to represent him and that attorney filed an answer for him but later got into some kind of trouble and left the county, and was not present when the trial commenced. Mr. Booker, however, was notified that the case was on trial but did not go to court. Before the adjournment of court he learned that judgment had been entered against him, but he made no motion for a new trial until several months afterward. After judgment against him in the county court he did not prosecute his appeal to the circuit court within the time required by

law. At no stage of the proceeding did he manifest any degree of diligence. The circuit court had no jurisdiction to consider his appeal nor do we have any. The proof shows without dispute that Booker owes the amount of the judgment, and the same is accordingly affirmed as to both appellants.

Affirmed.