ETHRIDGE, Chief Justice.
This case involves a suit by a college, through its receivers, (1) to recover losses suffered as a result of its president purchasing stock for it in defendant insurance company, on the theory that the insurance company and its president were participants with knowledge of a breach of trust by the college president; and (2) equitable estoppel of a charitable corporation from asserting the invalidity of an executed purchase of corporate stock and a defense of ultra vires.
This action was brought by T. S. J. Pendleton and R. G. Nichols, Jr., receivers of J. P. Campbell College, against R. M. Stevens, president of the college, Walter H. Williams, president of Security Life Insurance Company, and the insurance company. The suit grew out of the purchase by Stevens for the college of 500 shares of stock in the insurance company in July and August 1963. The stock was bought for the establishment of an endowment fund by the college, and the transaction took place between Stevens and Wil *237 liams. Shortly thereafter, the college pledged the stock to a hank in Cleveland, Mississippi, as security for a loan of $15,-000. Upon default of the loan and failure by the receivers of the college and the bank to find a purchaser for the stock at its original selling price of $100 per share ($50,000), the stock was sold to an individual member of the board of directors of the insurance company for $17,587.
Suit was filed in the Chancery Court for the First Judicial District of Hinds County on November 29, 1965, against Stevens, Williams, and Security Life Insurance Company, seeking judgments against all three for the difference between the purchase price of the stock ($50,000), and the price brought in the foreclosure sale, after default by the college on the bank loan ($17,-587).
The chancery court held: The board of trustees of Campbell College did not authorize the purchase of this stock by its president, Stevens. He owed a fiduciary duty to the college, and his purchase of the stock was highly speculative, so he violated his fiduciary relationship by buying the shares in Security Life. Hence Stevens was liable to the receivers for the cost of the stock less a credit for the loan, $32,-413. Stevens took no appeal from this decree.
As to Williams and Security Life, the chancery court found that the sale of the stock was not induced by the subsequent election of Stevens to the board of directors of the insurance company. The stock purchase was ultra vires but, because its sale and pledge to the bank by the college are not questioned, the college and the receivers are equitably estopped from asserting any claim against Williams and the insurance company. Hence the decree dismissed the bill as to Williams and Security Life.
I.
We do not consider whether this charitable corporation had the power to buy stock in another corporation. Assuming but not deciding that the purchase was ultra vires, the evidence does not show that appellees knew that Stevens was committing a breach of trust. The chancellor was justified in finding that, although Stevens purchased this speculative stock for the college in breach of his fiduciary duties, appellees did not have notice that he was committing a breach of trust. See, 3 Scott, Trusts §§ 297, 297.5 (2d ed. 1956); Restatement (Second) Trusts § 296 (1959) ; Scott, Participation in a Breach of Trust, 34 Harv.L.Rev. 454 (1921). As an alternative theory, appellants apparently are attempting to hold appellees as constructive trustees for the purchase price of the shares. However, the facts giving rise to a constructive trust must be established by clear and convincing evidence, and that burden is not met here. Saulsberry v. Saulsberry, 232 Miss. 820, 100 So.2d 593 (1958); Lipe v. Souther, 224 Miss. 473, 80 So.2d 471 (1955). The money was paid to Security Life for stock in the insurance company, and the share certificates were issued to the college at a price for which the other shares of this series had been sold. Knox Glass Bottle Company v. Underwood, 228 Miss. 699, 752-762, 89 So.2d 799, 818-824, 91 So.2d 843 (1956), is analogous in declining to hold liable a person who was not an officer or director of the corporation, where the evidence failed to show that he “knowingly colluded” with the Knox officers in violations of their fiduciary duties.
II.
Having determined that appellees had no notice of Stevens’ breach of trust and were not participants in it, the remaining question is whether appellants, representing the college, are estopped to assert the invalidity of the sale of stock to the college. We assume solely for purposes of this opinion that the college had no power to purchase the shares, but do not decide that issue. The purchase and sale of this stock took place in July and August 1963. This bill of complaint was filed on November *238 29, 1965, two .years and three months after the sale. The trustees of the college discovered what had happened about one year after the transaction, according to allegations of the bill. In short, the college and its receivers failed to take any action for one year and four months after they had knowledge of the purchase, and' two years and three months after it took place. The college had the duty to promptly disaffirm the purchase after receiving knowledge of it. The transaction had for a considerable period of time been completely executed.
Moreover, the college accepted and retained the benefits of the assumed unauthorized purchase of stock. Shortly thereafter, the college, through Stevens, borrowed money from a bank and pledged the stock as security for that loan. There is no evidence in this record attacking the validity of that loan and pledge. Upon default, the stock was sold to an individual, and the proceeds were used to pay off the loan. Under these circumstances, the chancery court was amply justified in finding that the college was estopped in equity from asserting the alleged ultra vires nature of the stock sale, which had been completely executed for over two years.
The doctrine of ultra vires was formulated in the middle of the last century, but in recent decades it has been severely curtailed by judicial decisions and legislation. See Miss.Code 1942 Ann. § 5309-06 (Supp. 1966) (Mississippi Business Corporation Act of 1962, limitations on defense of ultra vires) ; 2 Hornstein, Corporation Law and Practice § 561 (1959). Hornstein states:
American courts in the absence of clarifying statute have generally applied the ultra vires doctrine to contracts wholly executory and refused to apply it to contracts wholly executed on both sides. Difficulty is caused by the intermediate grouping — contracts partially executory (including those fully executed on one side). With respect to these partially executory contracts, American cases divide into two groups: a majority of the courts permit suit on the contract by the party who has fully performed; a minority disallow suit on the contract, but do permit recovery under other legal theories, e. g., suit in quasi-contract or for money had and received. 2 Hornstein § 562 at 29-30.
Equitable estoppel is also applied where a contract has been partly as well as completely executed and the circumstances warrant that doctrine. Id. at 31.
7 Fletcher, Corporations section 3497 (1964), summarizes the generally accepted rule:
When an ultra vires contract has been fully performed on both sides, neither party can maintain an action to set aside the transaction or to recover what has been parted with. In other words, neither a court of law nor a court of equity will interfere in such a case to deprive either the corporation or the other party of money or other property acquired under the contract. The reason for this rule which is well settled is that the attempted contract, being void, is disregarded, and in its place a quasi-contractual obligation to do justice is enforced. Ultra vires will not justify the reopening of a completely executed transaction. Stated differently, if an ultra vires contract is fully executed1 on both sides, it cannot be attacked or set aside either by the corporation or by the other party to the contract. * * *
See also 7 Fletcher, Corporations § 3473 (1964).
Moreover, the law looks with disfavor upon the defense of ultra vires, and holds that the doctrine should not be allowed to prevail where it would defeat the ends of justice, or work a legal wrong. Home Owners Loan Corp. v. Moore, 184 Miss. 283, 185 So. 253 (1939); National Surety Co. v. Hall-Miller Decorating Co., 104 Miss. 626, 61 So. 700, 46 L.R.A.,N.S., 325 (1913). The doctrine of equitable estoppel has been *239 applied to both partly and completely executed contracts. 7 Fletcher, Corporations §§ 3409, 3473 (1964); 19 Am.Jur.2d, Corporations §§ 974, 977 (1965); 19 C.J.S. Corporations §§ 975, 977 (1940).
An analysis of the Mississippi cases as they have developed over the years supports the weight of general authority in application of the doctrine of estoppel against the college in its attack on the validity of this completely executed stock sale.
A corporation which accepts the benefits of a contract may not assert a defense of ultra vires in an action by the other party. New Orleans & N. E. R. R. v. Jemison, 144 Miss. 890, 110 So. 785 (1927); Watts Mercantile Co. v. Buchanan, 92 Miss. 540, 46 So. 66 (1908); Williams v. Bank of Commerce, 71 Miss. 858, 16 So. 238 (1894); Board of Trustees of Prairie Lodge No. 87, A. F. & A. M., v. Smith, 58 Miss. 301 (1888); see generally Note, 10 Miss.L.J. 293 (1938).
New Orleans & Northeastern Railroad v. Jemison, 144 Miss. 890, 110 So. 785 (1927), held that an individual who had accepted the benefits of a corporation’s ultra vires contract could not repudiate it when sued on the agreement. It stated that when a contract with a corporation was ultra vires but not otherwise illegal as malum prohibitum, and it had been fully executed by one of the parties, the other could not defeat a recovery by pleading that the contract was ultra vires. In a comprehensive opinion, it was said that the rule, “now recognized and enforced by this court, and which is in accord with the great weight of modern authority,” was that stated in Watts Mercantile Company v. Buchanan, 92 Miss. 540, 46 So. 66 (1908). Discussing Watts, the Court said:
In that case a corporation had purchased, and had executed a promissory note in payment of shares of stock in another corporation, and, when sued on its note by the person from whom the shares were purchased, the corporation set up its want of power to purchase the shares of stock as a defense to the suit. It does not appear from a report of the case what powers the charter of the corporation conferred upon it, but a statute expressly prohibited any corporation from purchasing or owning shares of the capital stock of another corporation. The transaction there in question was, therefore, one expressly prohibited by law; but the court, as pointed out in Fletcher’s Cyclopaedia on Corporations, vol. 3, p. 2622, ‘treated the case as involving a merely ultra vires contract.’
Two questions were there expressly decided: First a corporation cannot accept the benefit of an ultra vires contract and repudiate it when sued thereon; and, second, an action on the contract will lie. 144 Miss, at 897-898, 110 So. at 787.
The opinion in Jemison observed that in Watts a corporation which accepted the benefits of an ultra vires contract attempted to repudiate it, while in Jemison a person who had accepted the benefits of a corporation’s alleged ultra vires contract sought to repudiate it, “but the rule in each is the same.” Burnett’s Lumber and Supply Co., Inc. v. Commercial Credit Corp., 211 Miss. 53, 51 So.2d 54 (1951); Greenville Compress & Warehouse Co. v. Planters Compress & Warehouse Co., 70 Miss. 669, 13 So. 879 (1893).
Merchants and Planters Packet Co. v. Streuby, 91 Miss. 211, 44 So. 791 (1907), concerned a subscription by an agent for a corporation to stock in another company. The suit was for the purpose of imposing personal liability on the agent only, which was denied. The contract was not executed on either side. Streuby is not relevant to the present case.
In summary, we hold that the chancery court correctly applied the doctrine of equitable estoppel to the appellants, re *240 ceivers representing J. P. Campbell College, and dismissed their suit against appellees.
Affirmed.
BRADY, PATTERSON, INZER and SMITH, JJ., concur.