Mr. Justice Clayton
delivered the following opinion :
This case brings up the question so often discussed in this court, as to the consequence of taking more interest by a bank than is allowed by its charter. The decision below was, that no part of the sum loaned, either principal or interest, could be recovered.
*173 I shall enter upon no examination of the facts to show that the jury was justified in finding that the contract was usurious. I shall take it for granted, that the proof establishes the taking of more interest on the part of the bank, by the contract in this case, than the charter allowed. The consequences of such usurious contract, whether all recovery.is prevented, as was decided in the court below, or whether the principal sum may be recovered without any interest, under the provisions of our statute, is another consideration, to which this opinion will be devoted.
It may now be regarded as settled law, that an inquiry into a violation of its charter by a bank or other corporation, can only be had in a direct proceeding, instituted for the purpose by the government; and not in a collateral way, by individuals. This principle has been recognized by the supreme court of the United States, by many of the State courts, and most explicitly on more than one occasion by this court. Fleckner v. Bank United States, 8 Wheat. 388; Vidal v. Girard’s Executors, 2 How. S. C. R. 127; 16 Mass. R. 102; 3 Ran. 143; 4 Shepley, 224; Bank v. Hammond, 1 Rich. Law. R. 288 ; Commercial Bank of Manchester v. Nolan, 7 How. 508; Wade v. American Colonization Society, 7 S. & M. 663; Bank of Port Gibson v. Nevitt, 6 S. & M. 513. See Reg. v. Bomlin, 2 Gale & D. cited 5 Har. Dig. 385, tit. Corporation.
In the case last cited, this court was unanimous at least upon that point. In the opinion of the majority, the principle is thus stated: — “ Forfeiture or violation of charter cannot be enforced, or set up in defence by any third person, either directly or collaterally, to avoid compliance with the contract.” 561. In the dissenting opinion, it is thus laid down: — “The doctrine is well established, that a corporation is not to be deemed dissolved by reason of any misuser or nonuser of its franchises, until the fault has been judicially ascertained and declared, even if the charter declare that in default of fulfilling the conditions, the corporation shall be dissolved. Hence, such a defence could not be set up to an action of assumpsit upon a promissory note.” 580. Thus it would seem that with entire unanimity, this court *174 has decided that a violation of charter, or a misuser of franchises by a bank, is no defence to an action upon a promissory note. It follows that the violation of charter by the bank in the contract in this case is to be laid out of view. That is a matter for which it is responsible only to the government which created it. This view extends asnvell to the cotton contract, as to the excess of interest; if either were a breach of charter, it can only be investigated at the instance of the state. For a violation of charter it is responsible only to the state ; for a violation of the general law of usury, it is answerable as any person would be.
Then if an investigation into the violation of charter is precluded in this cause, as a matter with which the defendant has no concern, it remains to ascertain the effect of the general law upon the contract.
It is not now to be doubted, that corporations are subject to the general laws of the land, so far as applicable to them. Louisville Railroad Company v. Litson, 2 How. S. C. R. 127; By the same court, it has been expressly decided, that-banks are within the statute of usury. Thornton v. Bank of Washington, 3 Peters, 42. A long list of cases to the same purport might be added from the state courts. Their charters may create particular exceptions, and exempt them from the operation of certain parts of the law, and from their very nature other portions are inapplicable to them. Yet where the general law may apply, it comprehends them, except so far as the charters take them out of its influence. Then the conclusion is attained, that the general law of usury applies to banks, except so far as it is modified by their charters. This charter does not provide that if the bank takes more than the rate of interest therein provided, the contract shall be avoided. If it does contract for more, we must look to the general law to ascertain the consequence. We have already stated, that the breach of charter is no defence to the action. The charter is its particular law.
The usual construction of the statute of this state in regard to interest and usury, as it stood when this contract was made, was, that on every species of contract of loan, interest at the rate of eight per cent, might be legally contracted for, and ten *175 per cent, might be agreed on as conventional interest for money-loaned, if the agreement were expressed in the written contract. If these rates were exceeded no interest could be recovered, but the principal sum only. In the argument of this cause, however, it is insisted, that this construction is erroneous. That in regard to the loan of money, if there be not a written stipulation for ten per cent, that reservation or taking of more than eight per cent, avoids the whole contract. This result is thus worked out in the argument. The first section of the act, as it is found in Poindexter’s Revisal, it is said, provides exclusively for contracts of sale or loan, of other articles than money, and fixes the rate of interest at eight per cent. The second section provides that ten per cent, may be lawfully agreed on, as the rate of interest for loaned money, if inserted in the written agreement; in each of these sections, it is provided, that an excess of the rate of interest prescribed, shall work a forfeiture of all interest, but allows the principal sum to be recovered. As to the third section, the argument says, if it do not relate exclusively to contracts matured, then it must constitute the general law, and the two former sections the exceptions; and by this section, there being no penalty for a breach of it, any such breach must fall under the common law penalty, which was a forfeiture of both principal and interest. These sections stand as 14, 15 and 16, in H. & H. p. 374.
I cannot concur in this view of the statute. Its object clearly was to prescribe a rate of interest in every possible case, and to affix the consequences to be visited on the offender for a violation of its provisions. The first section for the sake of argument, may be conceded to have the limited construction contended for. But suppose on a bona fide loan of money, nine per cent, be agreed on as the rate of interest, but it is not inserted in the written agreement. According to the argument, the whole sum must be lost, though if the rate of interest had been expressed in the agreement, the principal sum and the interest, yea, even ten per cent, if agreed on, might be recovered. An exposition which leads to such results, ought not to be hastily adopted.
*176 I will extract a few rules for the construction of statutes, and proceed to apply them. In construing a statute you must look to the old law — the mischief and the remedy which the legislature meant to apply.
The intention of the statute is to be deduced from a view of the whole, and of every part of it, taken and compared together. It is also a rule that several acts upon the same subject, and relating to the same matter, are to be taken and construed together and compared, because they are considered as having an object in view, and as acting upon one system. And this is the rule, though some of the statutes may have expired, or been repealed, or are not referred to in the other acts. Not that a repealed law has any force, but it may aid in construction. Dwarris, 47. Where a statute is special, but the reason is general, it is to be received in a general sense. A thing which is within the intention of the makers of the statute, is as much within it as if it were within the letter.
In construing acts or statutes, judges are to look at the language of the whole act, and if they find in any particular clause an expression, not so large a'nd extensive in its import as those used in other parts of the act; and upon a view of the whole act, they can collect from the more large and extensive expressions used in other parts, the real intention of the legislature, it is their duty to give effect to the larger expressions.” Dwarris on Statutes, 41-48; 1 Kent, 461, 463.
With these rules in view, we will consider the statute in question. The act of 1805 of this State, first introduced the principle, that in case of excess of the rate of interest allowed by law, no interest but the principal sum only should be.recovered. This continued to be the law until 1817, when the constitution provided, “ that the general assembly should pass no law impairing the obligation of contracts, prior to the year 1821, on account of the rate of interest fairly agreed in writing between the contracting parties for a bona fide loan of money. But they shall have power to regulate the interest, when no special contract exists in relation thereto.” The statute of 1818 carried out this provision, and as much as forty per cent, has *177 been recovered, upon such contracts. Walker’s R. 207. Then came the statute of 1822, the same now under consideration. By each and all of these, the policy of this state is plainly manifested and declared, that in every case, the utmost penalty for usury shall be the forfeiture of the interest only, and that the principal shall be recovered. This is admitted in the argument to be the rule, in reference to every species of contract of bargain and sale, or the loan of anything but money ; and the rule for the loan of money too, where the rate of interest is reduced to writing; but if the rate be not inserted in the written agreement, then it is said, that a case of the loan of money is not within either of the first two sections of the statute, and the whole principal and interest must be forfeited.
There is nothing in this act of 1822 to indicate that the whole policy of the state, as exhibited in its previous legislation, was to be reversed in a case of a loan of money, .where the rate of interest was not agreed on in writing, and in no other; and that in such case, an agreement for more than eight per cent, should avoid the whole contract. There could be no possible motive for such distinction. The case is as much within the meaning and object of the statute as any other. Indeed, the main if not the whole purpose of the two first sections, is-to regulate and provide for interest upon money loaned. The provisions of the first are directed against those shifts and devices often resorted to by usurers to evade such laws, and to prevent a sale or loan of any articles but money, as a subterfuge or cover for usury. The bona fide loan of money, spoken of in the second section, was to distinguish that kind of coutract from those which were colorable only.
The enlarged expressions of these statuses may comprehend' the loan of money, where the rate of interest agreed on is not reduced to writing. The greater includes the less. The legal rate of interest in such cases is eight per cent.; it stands on the same footing with all other contracts of loan. Either this is the fact, or such case is not provided for at all — it is a casus omis-sus, wholly out of the law. We cannot think, that in legislating upon this subject, and with the declared intention in the pre *178 amble to regulate the rate of interest, it was the intention of the legislature to omit this large class of contracts. On the contrary it is our opinion, that the first two sections were intended to govern, and do govern every species of contract, in which there was a positive stipulation as to the rate of interest, whether upon a loan of money, or any other thing intended as a shift or device to cover a loan of money. The third section provides for the rate of interest in all cases, in which there is no contract for that purpose, and in those cases only. This construction is the more obvious, because the first two sections provide, that in the event of any contract for more than the legal rate of interest, the principal sum only, but no interest shall be recovered. The third section does not contain this provision, for the reason, that where there was no contract at all for interest, there could be no breach of the law, and consequently no penalty.
This construction of the law has heretofore prevailed in this state. The argument we have just been considering was urged in the case of the Planters Bank v. Snodgrass, 4 How. 616, by the same distinguished counsel who urged it in this case. It did not then prevail. True the opinion of the court turned on another point — that there was no usury — yet the court says very expressly, “ that the penalty prescribed by our statute, is the loss of the entire interest, legal as well as usurious. And it is not less a penal law, because it does not provide for the whole debt, or visit the offenders with fine and imprisonment.” The chief justice dissented in that case, holding that the transaction was usurious. The case of Forniquet v. West Feliciana Railroad Company, 6 How. 116, next came up. The question there was as to usury by the bank, and evidence was offered in support of the plea, which was ruled but by the court below. The chief justice, in delivering the opinion of the court, said, “ the testimony was improperly ruled out, for if more than legal interest was taken, the defendants, to say the least of it, were entitled to an abatement of something, either the whole or part of the interest.” But there is no intimation, that the principal was put in jeopardy. That opinion was unanimous. Next came the case of The Commercial Bank of Manchester v. Nolan, *179 7 How. 508, which underwent elaborate investigation. A majority of the court decided, that if usury existed, it did not avoid the whole contract, but prevented a recovery of any interest. The chief justice held that there was no usury in the transaction, and gave no opinion as to the effect of usury. Lastly, in the case of the Planters Bank v. Sharp, 4 S. & M. 75, the two judges who presided in that cause, concurred in the opinion, that the effect of usury on the part of the bank was to prevent a recovery of the interest, not of the principal. The chief justice yielded his previous impressions of the law, and acquiesced in the former decisions. I think, therefore, the matter may be regarded as res judicata, a question settled and at rest.
But it is said, the usury act can have no influence in this case, because the bank might take more than seven per cent., the amount allowed by its charter, and yet less than eight per cent., and thus not violate the statute against usury. If this were so, and if the defendant could not under these circumstances use it as a defence, and if the punishment of the bank for a violation of its charter, is to be left to the state alone; all this should not lead us to violate a rule of law that has been settled upon great consideration, — namely, that a breach of charter can only be inquired into upon a direct proceeding for the purpose. So far as the objection operates in this instance, it is in favor of the bank.
This point was not involved in the case of the Commercial Bank of Manchester v. Nolan, 7 How. 508, because the rate of interest allowed by that charter was eight per cent., the same with the general law. The case did not call for the consideration of the effect of a difference in the rate of interest between the charter and the general law. The opinion is there stated, that where a bank exceeds the rate of interest allowed by its charter, but does not transcend the general law, the contract is not void. This must be the rule. Where the charter prescribes a less rate of interest, than the general law, the general law is to that extent repealed and modified, as to such bank, and the charter takes the place of the general law. The rule is thus stated, in a case in Yirginia. “ The charter of the bank *180 does not repeal the statute against usury expressly, and the repeal of statutes by implication is not favored. If by any reasonable intendment, both statutes can have effect, such construction is given them, and where they are inconsistent in some degree the one last passed repeals the former, to the extent of such inconsistency, and no further.” Stribling v. Bank of the Valley, 5 Ran. Any other rule of construction would deal out different measures of justice to different suitors, and prove a practical and melancholy exemplification of the evils of partial legislation.
The question of usury in this case, was a question of fact for the jury, under instructions from the court. If there were any, it probably exceeded eight per cent., so that after all there may be no room for the distinction.
In the charter of the Commercial Bank of Manchester there was no positive prohibition against exceeding the given rate of interest; in this charter there is. Yet the principle there established, that banks are within the general law of usury, protects the contract in this case, as well as in that, from a forfeiture of the principal sum lent. We confined the decision in that case to the facts before us, and therefore the restriction in the language employed. In either case the violation’of charter is not taken into view, but is left to the appropriate action of the state. If the charter had expressly provided that for the taking of more interest than was authorized, the contract should be void, no recovery could be had, because that would have shown an intention to repeal the general usury law, as to this bank.
The question as to the power of the bank to make this contract, may require a few words. Although the authorities are not uniform on this subject, in my view, the question of power of necessity involves the consideration of the breach of charter. To ascertain if the power exists, the charter must be looked to, and if it does not, the attempt to exercise it is a violation of charter, or an usurpation of powers not granted. For this the bank is responsible to the state, but not to those who have dealt with it.' This is .a question with which individuals have no *181 concern. If they deal with a bank, and get all they contract for, and are not disturbed in its enjoyment, it is difficult to see on what ground, they can object a want of power in the bank to have granted it. This is the course of decision in the supreme court of the United States. In regard to the power of a corporation to take certain property upon trust, it thus speaks : “ If the trusts be in themselves valid in point of law, it is plain that neither the heir of the testator, nor any other private persons, can have any right to inquire into, or contest the right of the corporation to take the property, or execute the trusts; but this right would belong exclusively to the state in its sovereign capacity, and in its sole discretion, to inquire into, and contest the right of the corporation to take the property.” Vidal v. Girard’s Exr’s. 2 How. S. C. Rep. 191. See also, 8 Wheat. 355.
If the bank exceeds the powers granted to it, or makes contracts, or performs acts not german to the purposes for which it was created, it is certainly responsible to the government. But this of necessity involves the consideration of a breach of charter. If such act violates a general law, the bank is responsible for it, just as an individual would be.
Yet if the defendants be permitted to make the defence in this case, the result is the same. If an individual exceeds a power granted to him, the act is valid to the extent of the power, but void for the excess. See 7 How. 535, and authorities cited. If the contract be not legal, the measure and extent of the illegality must be determined by the law. The statute of usury comprehends the case according to the repeated decisions of this court, and my own deliberate convictions. By that statute the only penalty is a forfeiture of the interest. This is conceded to be the case, if the rate of interest be inserted in the written agreement, provided it do not exceed ten per cent. Nothing short of the express declaration of the legislature, could satisfy me, that it was their object and intention to exact a forfeiture of the whole principal and interest, where the rate agreed on upon a loan of money is not reduced to writing. There is no conceivable reason for such a distinction. The statute *182 authorizes a conventional interest of ten per cent, under certain circumstances; but in the absence of those circumstances it is eight per cent. In either case a violation of the law is subject to the loss of all interest. I do not believe that there is any hiatus or omission in the statute, in regard to this class of contracts.
The charges given in the court below, not being in accordance with these views, the judgment is reversed and the cause remanded for a new trial. If on such trial the jury-should find, that the bank by its contract was to receive,. without putting the principal or any part of it to hazard, more than the rate of interest allowed by its charter, which in this instance took the place of the general law, as above shown, then they will be ’instructed to find for it, only the principal sum lent. But if they should find, that there was no contract for illegal interest, or that in regard to the cotton, no more than a just compensation for labor and trouble bestowed upon it, was stipulated for, and in regard to the exchange, that there was any real hazard, that the bank might receive less than its principal 5 then they should be instructed to find the principal sum with interest.
Judgment reversed, and'new trial granted.
Mr. Chief Justice Sharkey
delivered the following opinion.
This case originated out of a transaction which is commonly denominated a cotton contract, the nature of which is well understood, as all the banks in the state were, for a time, in the habit of making such contracts, and they have also given rise to much litigation between the banks and their debtors. The questions involved are not new in this court. The Grand Gulf Bank made a loan of money to the defendants, and was to receive and ship to-a foreign market, a quantity of cotton, on certain terms agreed on, and apply the proceeds in liquidation of the debt. This contract is said to be tainted with usury, because the bank reserved the domestic exchange over and above the legal rate of discount, by which is meant the exchange between the port of shipment, and the northern cities.
After a very careful examination and comparison, I am un *183 able to perceive any material point in which this case differs from the case of the Commercial Bank of Manchester v. Nolan, reported in 7 How. 508, which grew out of a contract of the same kind. An effort has been made to draw a distinction, but it consists rather in the mode of presenting the questions, than in any difference in the questions themselves. In that case every feature and point was very fully considered by a majority of the court, after having heard arguments of counsel at great length and of uncommon ability. No new lights have been brought to bear on the points then decided, nor have any new questions been raised which could justify the application of a different rule of decision. We are now called on a second time to say whether the case of the Commercial Batik v. Nolan shall stand as authority, or whether it shall be disregarded and a new rule established. On a former occasion I expressed the reasons which induced me to regard this case as having finally settled all the questions decided by it. Planters Bank v. Sharp, 4 S. & M. 75. I then declared my determination to conform to the rule of decision established by the case of the Commercial Bank v. Nolan. I made this declaration after a full consideration, under a conviction prompted by a sense of duty, and I shall adhere to it. The same reasons which then induced me to acquiesce still exist, and the lapse of time has produced others no less pressing. The case of the Commercial Bank v. Nolan, was decided at January term, 1843. It was followed and approved at November term, 1844, in the case of the Planters Bank v. Sharp, and an assurance then given that it would be afterwards adhered to as furnishing the rule of decision. The community therefore had a right to consider the law as finally settled, and many of the transactions of that description were doubtless arranged by the parties in conformity with the construction which had been given to the law. We may well suppose too that much of the litigation which grew out of these contracts, has been brought to a close in the circuit courts in accordance with the decisions of this court. To alter the rule now would be attended by unfortunate, if not mischievous consequences. We should subject the same class of debtors to two *184 different rules, by making the same description of contract valid as to one and void as to another, a course which is not very well calculated to inspire the confidence of the community in the tribunals of justice. We should give a flat denial to the theory that the law is permanent, uniform and universal. After the law has been so long settled and so well understood, I should regard it as a dangerous precedent to depart from it.
Without pretending to discuss the merits of this case, I will remark that a case of usury is not very clearly made out; but for the reasons already stated, I shall not attempt an investigation of that question.
I think the judgment ought to be reversed, and the cause remanded.