# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01381-SCT

*DUDLEY KEENE, INDIVIDUALLY AND ON
BEHALF OF BROOKHAVEN ACADEMY AND
SHAREHOLDERS OF BROOKHAVEN ACADEMY*

*v.*

*BROOKHAVEN ACADEMY, INC., BROOKHAVEN
ACADEMY EDUCATIONAL FOUNDATION, INC.,
JEFF GATLIN, KEN POWELL, PHIL MCGEE,
AND DEAN SNIDER*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/10/2008 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN, JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DURWOOD EARNEST McGUFFEE, JR. |
| ATTORNEYS FOR APPELLEE: | FRANK CHANDLER BREESE, III |
| | DUDLEY F. LAMPTON |
| | CECIL MAISON HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/04/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     This case involves whether the acts of a for-profit corporation were properly ratified

and proper procedures were followed in the formation and transfer of responsibilities to a

nonprofit organization.  Dudley Keene, a shareholder in Brookhaven Academy, Inc., (the

Academy) filed suit against the Academy and Brookhaven Academy Educational

Foundation, Inc., (the Foundation) in the Chancery Court of Lincoln County, Mississippi. Keene claimed that the Academy failed to follow corporate bylaws and its articles of incorporation when the Academy set up and transferred the use of assets to the Foundation, a nonprofit corporation. Keene requested a declaratory judgment and sought injunctive relief.

¶2. The Academy and the Foundation filed an answer and affirmative defenses. They also filed a motion to dismiss, claiming that Keene lacked standing because his claims were derivative in nature and Keene filed in his individual capacity. The trial court granted the motion in part and denied the motion in part. The motion to dismiss was granted with respect to the alleged causes of action concerning the Academy's Board of Directors (Academy Board) which were derivative in nature. The motion to dismiss was denied as to Keene's causes of action in which he sought to enjoin the Academy's and the Foundation's corporate acts that were outside of the corporate charter. Later, the Academy and the Foundation filed a motion for partial summary judgment claiming without conceding that the shareholders had ratified the Academy Board's actions and Keene lacked standing to sue the Foundation, pursuant to Mississippi Code Section 79-4-3.04. Keene was not a member of the Foundation and not an authorized person to sue pursuant to the statute.

¶3. While the chancery-court case progressed, Keene filed a complaint in the Circuit Court of Lincoln County styled: ***Dudley Keene on behalf of Brookhaven Academy & Shareholders of Brookhaven Academy v. Brookhaven Academy, Inc., Brookhaven Academy Educational Foundation Inc., Jeff Gatlin, Ken Powell, Phil McGee, and John Does 1-11***. The circuit-court complaint was derivative in nature and asserted essentially the

2

same claims as the chancery-court matter. The defendants in the circuit-court case filed a motion to dismiss, or in the alternative, to transfer to chancery court. The circuit-court defendants argued in the motion to dismiss that Keene did not meet the demand requirements for a derivative action pursuant to Section 79-4-42. Alternatively, the circuit-court defendants argued that the circuit-court complaint was based on the same facts and asked for the same basic relief as the chancery suit. Likewise, the Academy and the Foundation filed a motion for continuance, or in the alternative, a request that the circuit-court case be transferred to the chancery court. The circuit court denied the defendants' motion to dismiss; however, it granted a transfer of the circuit court case to the chancery court.[1]

¶4. After the circuit-court case was transferred to the chancery court, the trial court granted all the defendants' motions for summary judgment and dismissed the action.[2] The chancellor found that: (1) the Academy was not a special-purpose corporation; (2) the acts by the Academy were voidable, not void; (3) the shareholders had received adequate notice of the purpose of the December 15, 2005, shareholders' meeting; and (4) the shareholders properly had ratified the actions of the Academy at the meeting. Keene appeals from this decision. This Court finds no error; therefore, the judgment of the Chancery Court of Lincoln County is affirmed.

**DISCUSSION**

---

[1] Keene filed an amended complaint on February 15, 2007, after the case was transferred to the circuit court.

[2] The trial court dismissed the Academy, the Foundation, Jeff Gatlin, Ken Powell, Phil McGee, and Dean Snider.

3

¶5.     The standard of review for a grant of summary judgment is de novo.  *Guidant Mut.*

*Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1275 (Miss. 2009).  The moving party

is granted summary judgment by the trial court provided that "the pleadings, depositions,

answers to interrogatories and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Miss. R. Civ. P. 56(c).  Summary judgment is granted with

abundant caution, and it must be granted where the nonmoving party "failed 'to make a

showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial.'"  *Mabus v. St. James Episcopal*

*Church*, 13 So. 3d 260, 263 (Miss. 2009) (quoting *Smith v. Gilmore Mem'l Hosp., Inc.*, 952

So. 2d 177, 180 (Miss. 2007)).

A.     **Ratification**[3]

¶6.     Keene argues that the trial court erred by finding that the shareholders properly

ratified the actions of the Academy Board.  Keene contends that: (1) the Foundation's vote

of 805 of its shares in the Academy legally could not be made because the Foundation is a

subsidiary of the Academy, and (2) the shareholders were coerced into transferring their

shares in the Academy to the Foundation.

---

[3]   At the reconvened December 21, 2005, meeting, the shareholders ratified the
Foundation as a solely owned 501(c)(3) nonprofit corporation, and the notice identified the
Foundation as being solely owned.  However, prior to that time, the Academy, even in its
answers, had identified the Foundation as a "subsidiary."  There is no indication in the
corporate documents, including those from the Mississippi State Corporation Commission,
federal forms, or other documents, that identify the Foundation as either a solely owned
corporation or a subsidiary corporation.

4

¶7.    The shareholders ratified: (1) forming a solely owned subsidiary, (2) the June 2004 lease of property from the Academy to the Foundation, and (3) the transfer of educational activities from the Academy to the Foundation. The minutes of the reconvened December 21, 2005, special meeting in lieu of the 2005 annual meeting of stockholders of the Academy reflected the vote results, in part, as follows:

Issue 4.    To ratify the Corporation's actions, on or about November 28, 2000, in forming a solely owned 501(c)(3) non-profit corporation, Brookhaven Academy Educational Foundation, Inc.

The minutes reflected that the total shares represented were 1,108, of which 942 voted in favor, none voted against, and 166 abstained. This issue was ratified by the shareholders.

Issue 5.    To ratify that certain lease dated June 1, 2004, entered into between Brookhaven Academy, Inc., and Brookhaven Academy Educational Foundation, Inc., wherein the corporation leased all of its real property comprising Brookhaven Academy, including the buildings, improvements and fixtures thereon, to Brookhaven Academy Educational Foundation, Inc.

The minutes reflected that the total shares represented were 1,108, of which 942 voted in favor, none voted against, and 166 abstained. This issue was ratified by the shareholders.

Issue 6.    To ratify the actions of the Brookhaven Academy, Inc. officers, directors and employees regarding the transfer of educational activities, formerly conducted by Brookhaven Academy, Inc. to Brookhaven Educational Foundation, Inc.

The minutes reflect that the total shares represented were 1,108, of which 940 voted in favor, two voted against, and 166 abstained. This issue was ratified by the shareholders.

¶8.    Mississippi courts have permitted shareholders to ratify past actions of corporations. In *Jowett v. Scruggs*, 901 So. 2d 638, 644 (Miss. Ct. App. 2004), the Court of Appeals

determined that the shareholders' act of ratifying the actions of a corporate president eliminated any defect in the president's actions.

### 1. Subsidiary

¶9. Keene asserts that the Foundation is a subsidiary of the Academy, and under fundamental corporate law, the Foundation cannot vote its 805 shares in the Academy, the parent company. He cites a number of cases from other jurisdictions noting that Mississippi has little caselaw on this issue. Keene cites *Italo Petroleum Corporation of America v. Producers Oil Corporation of America*, 174 A. 276, 291 (Del. Chan. 1934), an election-of-directors case, for his position that a wholly owned subsidiary should not be permitted to vote its shares in favor of a parent company.

¶10. Keene cites Section 79-4-6.31 concerning a corporation's acquisition of its own shares which states:

> (a) A corporation may acquire its own shares, and shares so acquired constitute authorized but unissued shares.
>
> (b) If the articles of incorporation prohibit the reissue of the acquired shares, the number of authorized shares is reduced by the number of shares acquired.

Miss. Code Ann. §79-4-6.31 (Rev. 2009).

¶11. Keene's argument fails for a number of reasons. First, Section 79-4-6.31 is inapplicable to the facts in this case, as the Academy did not acquire its own shares. Here, individual shareholders chose to transfer their stock in the Academy to the Foundation. The Foundation did not have "shares" of its own; rather it provided memberships in the Foundation. The Academy is not a member of the Foundation. Second, there is no allegation that the directors of the Academy and the directors of the Foundation were the same. Third,

the shareholders ratified the Foundation as a solely owned corporation, not a subsidiary of the Academy. Accordingly, this issue is without merit.

### 2. Coercion

¶12. Keene argues that the Foundation obtained 805 Academy shares by unlawful coercion. In his argument, Keene cites *Ivanhoe Partners v. Newmont Mining Corporation*, 533 A. 2d 585, 605 (Del. Chan. 1987) for the proposition that coercion amounts to a wrongful action by a party to induce a shareholder to sell his stock for "reasons unrelated to the economic merits of the sale" such as "a tender offer structured so as to afford shareholders no practical choice but to tender for an unfair price." *Ivanhoe*, 533 A. 2d 605. Keene argues that a shareholder had little incentive to keep the Academy shares when that shareholder was being coerced into paying $750 to keep the shares.

¶13. In an undated letter from the Academy Board to Academy patrons concerning 2004 school registration, the Academy notified patrons of the stock-option transfer. The letter stated, in part:

> Enclosed you will find our new registration forms and membership information. According to the guidelines set forth, anyone who wishes to exchange their stock certificates for membership in the new foundation may do so at no charge. However, new families, or those currently enrolled families who do not wish to exchange their stock for a membership, will be required to purchase a membership at a cost of $750.00 before enrolling their children.

Part of the registration process included an application for the Foundation. The application stated, in part:

> I understand that no membership certificate will be issued until the following conditions are met:

7

> -- I pay the non-refundable and non-transferable membership fee of $750.00, or I transfer two shares of capital stock of Brookhaven Academy, Inc. to Brookhaven Academy Educational Foundation, Inc.
>
> -- I am approved as a member by the Board of Trustees of the Foundation.

Each family had to have a minimum of two shares to enroll its child in the Academy. With the advent of the new Foundation, the requirement to be a member in the nonprofit corporation was to pay $750 or transfer two shares of Academy stock to the Foundation in exchange for Foundation membership. The Foundation obtained 805 shares of transferred Academy stock.

¶14. Keene's argument is without merit. The school enrollment and Foundation membership requirements provided Academy shareholders the option either to retain their Academy stock or pay $750 for membership in the nonprofit Foundation. No shareholder was forced to surrender his or her Academy stock. Indeed, Keene chose to retain his Academy shares, even though he had no children in the Academy at the time. Nonetheless, shareholders had a choice, and both Keene and the defendants are in agreement that the Academy never reported a profit. We find that the enrollment requirements did not amount to coercion. Shareholders had an option either to transfer two Academy shares or pay $750 for school enrollment in exchange for membership in the Foundation.

**B.     Type of Corporation (General Purpose or Special Purpose)**

¶15. Keene argues that the trial court erred by finding that the Academy is a general-purpose corporation. He contends that the Academy is a specific-purpose corporation set up

for the purpose of conducting a school business.  The Academy's articles of incorporation state, in part:

> THIRD: the specific purpose or purposes for which the corporation is organized stated in general terms are:
>
> (1) To organize, own and operate primary schools, secondary schools and/or colleges and other educational institutions for the education of youth.
>
> (2) To fix the curricula for such schools, colleges and other such institutions and the standards and qualification of admission of pupils and students and for their retention in such schools, colleges and other such institutions and to reject any applicant for admission or to expel any person so enrolled and attending for any cause whatsoever.
>
> (3) To select and employ such principals, teachers, professors, instructors and other employees as the corporation may deem necessary and advisable and to deny or terminate such employment at the will of the corporation.
>
> (4) To prescribe, charge and collect such fees as the corporation may find necessary and proper to be collected from pupils and students and to vary such charges in any or all individual instances as may be determined by the corporation so that it shall not be necessary  for all the pupils or students in the same grade or classes to pay the same or identical fees or tuition, but such fees or tuition as may be charge in each case and each instance to be solely within the discretion of the corporation.
>
> (5) To have and to exercise all powers conferred by the laws of the State of Mississippi upon corporations.
>
> (6) To purchase, own, lease, hire, or otherwise acquire real and personal property, improved and unimproved, or every kind and description, and to sell, dispose of, lease, convey, encumber and mortgage said property, or any part thereof.  To acquire, hold, lease, manage, operate, develop, control, build, erect, maintain for the purposes of said corporation, construct, reconstruct or purchase, either directly or through ownership of stock in any corporation, any lands, buildings, offices, stores, warehouses, plants, machinery, rights, easements, privileges, franchises and licenses, and to sell, lease, hire or otherwise dispose of lands, buildings or other property of the corporation, or any part thereof.

9

(7) To do all and everything necessary and proper for the accomplishment of the objects herein enumerated or necessary or incidental to the benefit of the corporation.

¶16. In reaching its decision, the trial court determined at the hearing for summary judgment that the Academy is a general-purpose corporation. The trial court determined that the formation of the Foundation was in line with the purpose of the Academy's articles of incorporation. Further, the trial court noted the language in subsection six, in particular the language that pertained to the Academy's ability to sell, lease, hire, and to dispose of land, buildings, or other property belonging to the corporation.

¶17. The trial court did not err by finding that the Academy is a general-purpose corporation. While one of the enumerated corporate purposes for the Academy is for the organization and operation of schools, it has many others, including "(5) To have and to exercise all powers conferred by the laws of the State of Mississippi upon corporations," and section six, concerning the sale, lease, acquisition and disposal of real and personal property, among other powers. Keene cites *Tallahatchie Valley Electric Power Association (TVEPA) v. Mississippi Propane Gas Association, Inc.*, 812 So. 2d 912, 919 (Miss. 2002) and *Blue Cross and Blue Shield v. Protective Life Insurance Company*, 527 So. 2d 125, 127-28 (Ala. App. 1987) for authority. Decisions from other jurisdictions are merely informative and not binding authority on this Court. *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 7 (Miss. 2007); *Cucos, Inc. v. McDaniel*, 938 So. 2d 238, 241 (Miss. 2006); *Griffith v. Gulf Refining Co.*, 215 Miss. 15, 61 So. 2d 306, 307 (1952). "While the Court may utilize these decisions as persuasive authority if it finds them well-reasoned, the decisions are not binding, and this Court is at perfect liberty to disregard them." *Paz*, 949 So. 2d at 7.

¶18.    ***Tallahatchie Valley*** is distinguishable from Keene's case because it involved compliance with statutory laws for regulating rural electric power companies.    In ***Tallahatchie Valley***, this Court determined whether Mississippi's Electric Power Association Law prohibited TVEPA, a rural electrical power company, from acquiring a controlling interest in an entity that did not provide electricity.  ***Tallahatchie Valley***, 812 So. 2d at 914-15. *See also* Miss. Code. Ann. § 77-5-201 to 255 (Rev. 2009).  TVEPA's board of directors invested in a propane gas business.  ***Id***. at 915.   However, both the statutory Act and TVEPA's charter confined it to using electrical energy.  ***Id***. at 918.  This Court found that the Act expressed a clear legislative intent that limited a corporation under the Act to acquisition of electrical energy.  ***Id***.  This Court held that "TVEPA's corporate purpose is limited to and cannot exceed the powers granted by the statutory scheme pursuant to which it was created." ***Id***.

¶19.    Keene also cites ***Blue Cross*** for the proposition that a specific-purpose corporation has only those powers necessary to effect its corporate purpose. ***Blue Cross***, 527 So. 2d 127-28.    As noted above, rulings from other jurisdictions are nonbinding on the courts of Mississippi. ***Paz***, 949 So. 2d at 7.  In ***Blue Cross***, the corporation sought to acquire a life insurance company and to market life insurance.  ***Id***. at 126.  The Court of Appeals of Alabama determined that Blue Cross was "purely a statutory creature" whose powers were derived from the Alabama Code.  ***Id***.  The Alabama court also determined that Blue Cross was a specific-purpose corporation limited to maintaining a health-care service plan, and marketing life insurance was prohibited.  ***Id***. at 128.  Like ***Tallahatchie Valley***, ***Blue Cross***

11

is distinguishable from Keene's case because it was governed by specific statutes created for regulating a specific industry. Accordingly, this issue is without merit.

## C.    Void or Voidable Acts

¶20.    Keene argues that the trial court erred by finding that the acts of the Academy Board were voidable and not void. He contends that the Academy Board's actions were *ultra vires* or outside of its corporate powers. Most of Keene's argument is based on his position that the Academy is a special-purpose corporation and, as such, was prohibited from: (1) forming the Foundation; (2) becoming a "holding company" in essence; and (3) transferring Academy assets via a lease to the Foundation.

¶21.    This Court has held that the term "'ultra vires' has been used to refer to acts which the corporation's charter does not authorize." ***Bryant Constr. Co. v. Cook Constr. Co., Inc.***, 518 So. 2d 625, 629 (Miss. 1988). *Ultra vires* also signifies an act that exceeds the powers of the corporation as defined by law. ***Id***. In ***Burnett's Lumber & Supply Co., Inc. v. Commercial Credit Corporation***, 211 Miss. 53, 59, 51 So. 2d 54, 57 (1951), this Court held that "[a]n act of a corporation relating to the subjects within its powers though it should exceed those powers is not void." This Court further held that "[i]t is true that the act of a corporation entirely foreign to the purposes for which it was created is void from want of power." ***Id***.

¶22.    Keene's underlying contention that the Academy Board's actions were *ultra vires* in nature and, thus void and not voidable, hinges on his position that the Academy is a special-purpose corporation. As addressed in Issue B, the trial court did not err by finding that the Academy was a general-purpose corporation based on the enumerated corporate purposes contained in the articles of incorporation. The articles of incorporation, as previously

mentioned, also conferred on the Academy the powers to lease and hold real and personal property. Additionally, section five and seven of the articles of incorporation generally provided that the Academy had "all powers conferred by the" corporate laws of Mississippi, and "[t]o do all and everything necessary and proper for the accomplishment of the objects herein enumerated." Therefore, Keene's contention that Academy Board's actions were *ultra vires* in nature in forming the Foundation, being a "holding company," and in transferring assets via a lease, are without merit, because the actions were within the confines of the power conferred on the Academy. Additionally, the shareholders ratified the actions of the Academy Board in forming the nonprofit Foundation, transferring the educational activities, and entering into a lease with the Foundation. Indeed, in his deposition, Keene stated that he had no problem with the formation of the nonprofit corporation to obtain tax-exempt status; he objected only to not having a vote on the issue. Further, Keene chose not to attend or vote at the meeting which ratified the Academy Board's actions. The trial court did not err in finding that the Academy was a general-purpose corporation. Consequently, none of the Academy Board's actions were *ultra vires* in nature, and this issue is without merit.

**D.     Notice**

¶23.    Keene argues that the trial court erred by finding that the shareholders had adequate notice for the December 2005 special shareholders meeting. He therefore argues that because the notice was not adequate, the ratification vote was ineffective due to the failure to inform the shareholders fully on the issues.

¶24.    The Academy gave the shareholders notice of a December 2005 special meeting in lieu of an annual stockholders meeting. The notice provided the location, time, date, and

13

purpose of the shareholders meeting. *See* Miss. Code Ann. § 79-4-7.05(a) and (c) (Rev. 2009). Some of the enumerated reasons or purposes for the meeting were as follows:

> D. To ratify the Corporation's actions, on or about November 28, 2000, in forming a solely owned 501(c)(3) non-profit corporation, Brookhaven Academy Educational Foundation, Inc.
>
> . . .
>
> 5. To ratify that certain lease dated June 1, 2004, entered into between Brookhaven Academy, Inc., and Brookhaven Academy Educational Foundation, Inc., wherein the Corporation leased all of its real property to Brookhaven Academy Educational Foundation, Inc.
>
> 6. To ratify the actions of the Brookhaven Academy, Inc.'s officers, directors and employees regarding the transfer of educational activities, formerly conducted by Brookhaven Academy, Inc., to Brookhaven Academy Educational Foundation, Inc.

¶25. The notice also contained a proxy vote listing the issues to be voted at the meeting. Mississippi Code Section 79-4-7.05 provides the notice requirements for a special shareholder meeting. Keene argues that the shareholders were not provided adequate notice concerning the purpose of the special meeting. In regard to the purpose of a special meeting, Section 79-4-7.05(c) provides that "[n]otice of a special meeting must include a description of the purpose or purposes for which the meeting is called." Miss. Code Ann. § 79-4-7.05(c) (Rev. 2009). We find that the trial court did not err by finding that the Academy provided adequate notice to the shareholders. The notice, as previously discussed, provided each shareholder more than a mere description of the purpose, pursuant to the statute. In addition, an attached proxy vote sheet setting forth the voting issues referenced the discussion of the issues in the December 15, 2005, minutes. Also, the wording of the issues provided additional clarification for the shareholders. Indeed, the shareholders voted to ratify the

14

formation of the Foundation, the lease, and the transfer of educational activities.  Further, the Academy complied with the notice requirements pursuant to Section 79-4-7.05.  Therefore, this issue is without merit.

**CONCLUSION**

¶26.    For the above reasons, the judgment of the Lincoln County Chancery Court is affirmed.

¶27.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR.**